UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| UNITED STATES OF AMERICA, | No. CR 12-0119 SI (LB) |
|---|---|
| Plaintiff,<br>v.<br>JOSEPH ORTIZ, et al.,<br>Defendants.<br>_____/ | **ORDER GRANTING DEFENDANTS' MOTION FOR DISCOVERY AND SETTING UP PROCEDURES** |

## I. INTRODUCTION

The defendants who are death eligible (Joseph Ortiz, Victor Flores, Justin Whipple, and Benjamin Campos-Gonzales) filed a motion for discovery that covers many categories generally and more specifically seeks timely discovery to aid in the defense presentation to the Capital Case Review Committee at the United States Department of Justice. *See* Motion, ECF No. 152; Joinders, ECF Nos. 168, 169, 171, 180, 219, 221.[1] The court also has been conducting regular case management conferences to monitor the timely production of discovery.

The discussion section that follows has two subsections: (A) the production of discovery generally, its full production as of October 31, 2012 except for certain redacted material that the government has withheld on the ground of witness safety, and the court's orders about the discovery

---

[1] All defendants in this case are deemed to join in any motion unless they opt out. *See* Order Regarding Joinders, ECF No. 192. The record does not reflect opt-outs. The motion requests discovery in many general categories relevant to all defendants.

ORDER (CR 12-0119 SI (LB))

1  requests (except for the redactions for witness safety), and (B) the court's further orders about the
2  redacted/withheld discovery to ensure that certain withheld information relevant to the capital case
3  process is disclosed promptly.

## II. DISCUSSION

### A.  Discovery To Date (and Rulings on All Issues Except Redacted Discovery)

At the October 4, 2012 hearing, the government stated that it had produced 27,793 pages of discovery. 1,784 pages are redacted. The government said that it had an additional 10,000 pages of discovery to produce in categories ranging from California DMV records to local reports. The government did not know how many pages of the additional pages would be redacted.

The court documents the following points and orders about the discovery that the government has produced and the defense's general requests for discovery. (This section covers everything in the pending motion except the discovery that the government has redacted/withheld on the ground of witness safety. That issue is addressed in the next section.)

One, the government said that it would produce the remaining 10,000 pages of discovery (except for the redactions) by October 31, 2012. The court has another discovery case management conference set for November 8, 2012 to make sure everything was produced.

Two, the government has been providing a discovery index with its productions to Blair Perilman, the coordinating discovery attorney. Ms. Perilman suggested, and the court orders, that for the pending discovery not yet produced (and for all future discovery productions), the government include a column with an estimated production date. That discovery index should be provided to Ms. Perilman by the government on an every-other-week basis and must include all new discovery that the government has identified and the estimated date of production.

Three, as to the redactions, the government should identify in its discovery index produced to Ms. Perilman which pages have redactions. That process for discovery produced so far should be completed by November 15, 2012. Going forward, the information should be produced real-time with the discovery productions. When the government produces the non-redacted discovery, it should use a Bates convention (such as the same Bates ranges with a separate column labeled "U" for "unredacted") to facilitate the defense's incorporation of the documents into its review platform.

1  (The parties may meet and confer and come up with a different approach and include the court if
2  necessary in the discussion.)

3     Fourth, in their motions, the defense made general requests for Rule 16 discovery in different
4  categories, including the defendants' statements under Rule 16(a)(1)(A) and (B), criminal history
5  under Rule 16(a)(1)(D), documents under Rule 16(a)(1)(E), reports of examination and tests under
6  Rule 16(a)(1)(F), and expert witness summaries under Rule 16(a)(1)(G). The government made
7  some general objections (*e.g.*, Rule 16 entitles you to only certain statements by defendants, *see,*
8  *e.g.,* Opposition, ECF No. 213 at 8), but ultimately said that it was producing all Rule 16 discovery
9  by October 31, 2012. Among the categories of information that it confirmed that it was producing
10 are all expert reports (including firearms, triangulation of cell records, and autopsy).[2] (The court's
11 understanding is that disclosure of expert information includes expert Jencks because -- as discussed
12 below -- the government is declining to produce early Jencks only on the ground of witness safety,
13 and that concern does not apply here. If this is wrong, the government should tell the court by
14 written submission filed by Monday, November 5, 2012, at 3 p.m.)

15    Fifth, a related point is that in its opposition, the government made certain high-level objections
16 to the defense's equally high-level requests for information. One example is the Rule 16 back-and-
17 forth about the defendants' statements and what is and is not Rule 16. Two others are information in
18 aggravation and mitigation regarding statutory facts (18 U.S.C. § 3592) and non-statutory facts, and
19 evidence or information that mitigates against the death penalty (18 U.S.C. § 3592(a)(8)).[3] Another

---

[2] The court would have ordered the government to produce this discovery if the government had not decided on its own to produce it.

[3] In categories 14 through 30, the defense asked for information relevant to the penalty determination, including information in aggravation or mitigation concerning the death eligible defendants (statutory facts under 18 U.S.C. § 3592 or non-statutory facts), evidence mitigating against the imposition of the death penalty, evidence about credibility of witnesses at the penalty hearing, evidence about uncharged conduct of co-participants (charged or uncharged) who are not eligible for the death penalty (on the ground that the information sought was pertinent to the statutory mitigating factors in 18 U.S.C. § 3592(a)(4)), evidence about the victims' engagement in criminal activity around the time of the charged crimes, others' motives to kill the victims, information relating to the commission of a death-eligible offense by defendants or charged/uncharged co-conspirators, tangible evidence that the government will use at the trial or

1   is *Brady* and *Giglio* information. In its opposition, the government noted what Rule 16 requires, it

2   countered that early production was not required because the Jencks Act does not require production

3   before testimony, and it raised general concerns about witness safety. *See* Opposition, ECF No. 213

4   at 2-3, 8. At the hearing, the government said that its position was that there was certain information

---

penalty phase, scientific/forensic evidence that the government will use at the trial or penalty phase, evidence that the government has that state or local prosecutors considered and rejected in declining to seek the death penalty, identification of the statutory and non-statutory aggravating factors, *Brady* information tending to undermine those factors, mitigation information under 18 U.S.C. § 3592(a)(8), and *Brady* witnesses with information relevant to penalty hearing issues. Motion, ECF No. 152 at 4-7. The government objected generally to discovery as "premature," arguing that no special discovery rules apply to capital cases and that the timing should be pegged to the trial date. Opposition, ECF No. 213 at 2, 5, 6. It also raised objections to early disclosure of Jencks Act statements. *See, e.g., id.* at 8. The only objection that it made to the discoverability of these categories was with respect to categories 25 and 27, arguing that the information is not discoverable to the extent that the defense seeks information about the government's capital deliberations. Opposition, ECF No. 213 at 10.

The defense does not appear to seek information about the government's deliberative process. It does not ask why the government is making its decisions and seeks only the evidence (motives, victim's conduct, and so forth) relevant to those decisions. (The court observes that the parties' briefing in these areas is not very robust, but maybe that is because in the end they are not disagreeing about what is discoverable, only the timing of the disclosure.) In any event, information about the government's deliberative process is not discoverable. *See, e.g., United States v. Fernandez*, 231 F.3d 1240, 1246-48 (9th Cir. 2000); *United States v. Pray*, 764 F. Supp. 2d 184, 186 (D.D.C. 2011); *United States v. Furrow*, 100 F. Supp. 2d 1170, 1174-75 (C.D. Cal. 2000). The evidence that the defense seeks (as opposed to information about deliberations) is discoverable. *See, e.g., United States v. Dellatorre*, 438 F. Supp. 2d 892, 900-903 (N.D. Ill. 2006) (preauthorization discovery of mitigating and aggravating factors and other *Brady* material); *United States v. Perez*, 222 F. Supp. 2d 164, 168-70 (D. Conn. 2004) (materials relating to aggravating and mitigating circumstances -- generally tracking categories sought here -- are disclosable under currently-capital case with defendant presently subject to potential death sentence); *United States v. Feliciano*, 998 F. Supp. 166, 171-72 (D. Conn. 1998) (statutory mitigating factor is victim's consent to activity that caused death; information disclosable about co-conspirator with closely-related culpable conduct)). The court addresses the timing of the disclosures below in section B.

The government also makes high-level objections to the defense's high-level request for evidence of race, national origin, religious beliefs, or sex in the death penalty process, arguing that these are impermissible considerations. Opposition, ECF No. 213 at 11. The parties offered no briefing on this issue, but the court observes that the defense made no showing of entitlement under *Armstrong*. *See Perez*, 222 F. Supp. 2d at 173 (citing *United States v. Armstrong*, 517 U.S. 456, 463 (1996)).

1   it had to produce (*e.g.*, Rule 16 and *Brady*), and it would by October 31, 2012.  Then, it

2   acknowledged that there was information that it had but that it need not produce now (either because

3   it was too early -- such as Jencks or *Brady*/Jencks (on a *Cerna* timetable, *see United States v. Cerna*,

4   633 F. Supp. 2d 1053 (N.D. Cal. June 26, 2009)) -- or that it plain did not have to because it was not

5   Rule 16, Rule 26.2, Jencks, or *Brady*/*Giglio*).  As to this second category (too early or "don't have

6   to"), the government said that it nonetheless was producing this information by October 31, 2012

7   unless there were witness safety issues.  For discovery that implicated witness safety, the

8   government did not say it would not produce it but said that it would produce redacted information

9   now (by October 31) and unredacted versions on a time line geared to trial (and, citing *United States*

10  *v. Cerna*, said that a timeline of four weeks before trial or a similar deadline would be appropriate).

11  If the court is wrong about what the government was saying, then the government should correct that

12  impression in a written submission by Monday, November 5, 2012, at 3 p.m.

13      Sixth, the defense noted at the detention hearing that it did not see any federal reports -- as it

14  would expect to -- with follow-up on witness interviews or other witness statements (all at least

15  potentially *Brady*/Jencks materials).[4]  The court also notes that there appear to be more pages on the

---

[4] The court uses "*Brady*/Jencks" as a short-hand term for several reasons.  A, the government says that it will produce all information now that does not affect witness safety.  B, the information that does affect witness safety usually is in witness statements or reports talking about witnesses (and the court understands that witness statements in reports are not necessarily Jencks).  C, the court recognizes that the information sometimes *is* Jencks and *may* be *Brady*.  Just to avoid any government reaction that the court is assuming that the information *is Brady* or is misunderstanding what Jencks is, the court is not.  The *Brady* obligation is that a prosecutor has to provide information to a defendant that is exculpatory or impeaching and material to guilt or punishment.  *See United States v. Jerrigan*, 451 F.3d 1027, 1030 (9th Cir. 2006).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *See Kyles v. Whitley,* 514 U.S. 419, 433, 437 (1995).  The materiality standard is met when "the favorable evidence could reasonably be taken to put the whole case in a different light so as to undermine confidence in the verdict."  *Banks v. Dretke*, 540 U.S. 668, 698-99 (2004).  But everyone in this case is operating on the normal discovery plane:  the government provides discovery broader than *Brady* under the United States Attorneys Manual 9.5001(C)(1), which provides for disclosure of information beyond that which is material to guilt.  The government objects to early disclosure of information (usually in the form of witness statements or reports about witness statements or information about witnesses) that might affect witness safety.  The government is not resisting disclosure on the ground that the information is not *Brady*.  It assumes -- like everyone else does -- that it might be, so it puts in the category of

ORDER (CR 12-0119 SI (LB))
5

1   government's discovery index than the 37,793 that will be produced by October 31, 2012. If there is
2   more discovery (such as FBI 302s of witness interviews), the government must include all discovery
3   on its index and provide a copy of the index (including columns about time of production and
4   redacted portions by page) to the court by Monday, November 5, 2012, at 3 p.m.[5] (If this time frame
5   is too tight, the government should let the court know and propose a time frame that works.)

6   In sum, as to the Rule 16/Rule 26.2/*Brady*/Jencks discovery that the government has, the court
7   understands that the government is producing everything now and is withholding information now
8   only on the ground of witness safety. *See, e.g.,* Opposition, ECF No. 213 at 5. If this is wrong, the
9   government must say so in a written submission by November 5, 2012 at 3 p.m.

10   Seventh, as to any new potential discovery obtained by the government (whether Rule 16, *Brady*,
11   Jencks, Rule 26.2, or otherwise relevant information), the court orders that it be reflected on the
12   discovery index within two weeks from receipt. The index should include the time line for
13   production and any redactions by page (as this order requires). This will allow defense objections to
14   time lines for disclosure. Also, it will allow the court to address discovery disputes in the context of
15   the actual discovery at issue (as opposed to hypothetical discovery and general categories). (As the
16   court said at the hearings, it does not want to problem-solve in the realm of general categories but
17   instead wants to address the government's specific objections to disclosure of specific evidence. It
18   makes no sense to deal in generalities when -- as here -- the government says that it is disclosing
19   everything now except for specific information that is about witness safety and resists only the
20   timing of disclosure (not the fact of it).)

21   Eighth, the defense asks for disclosure of Rule 404(b) evidence, and the government confirms

---

"disclosable," either now or eventually (as potentially *Brady* and Jencks).

[5] This is not an order to produce the index globally to the defense if the government has some basis for withholding it. The orders in this section are geared to the production of discovery with an eye toward orderly case management and avoiding double-spending CJA money on things that the government has already processed. *See United States v. W.R. Grace*, 526 F.3d 499, 508-13 (9th Cir. 2008) (authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery, and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly).

ORDER (CR 12-0119 SI (LB))

that it will give notice as required by the Rule.  Motion, ECF No. 152 at 4; Opposition, ECF No. 213 at 9.  Once a trial date is set, a case management order can set the time lines for compliance with the rules.  *See*, *e.g.*, Final Scheduling Order, *United States v. Cerna et al.*, No. CR 08-0730 WHA, ECF No. 265 at 6 (Mar. 19, 2009).

## B. Information Redacted for Witness Safety

As the last section discusses, the government says that it has produced its evidence, will produce the rest as it receives it,[6] and will redact and withhold evidence only on the ground of witness safety.  As to the redactions, no one submitted any examples, but the government says that the redactions are "identity of witnesses, identifying information of witnesses, and witness statements."  Status Report, ECF No. 331 at 1.  The government is not resisting its disclosure entirely but says that the redacted information should not be produced until a date pegged to the trial date (as Judge Alsup ordered in *United States v. Cerna*).  The government suggests no earlier than four weeks before trial and also said that it would comply with any trial order regarding a schedule of production.  *Id.*

If this were not a capital case, disclosure of *Brady* information that implicates witness safety could be pegged to a trial date.  But the penalty makes a difference in the timing of disclosures.

*Brady* requires disclosure so that the information can be used effectively.  *See Cerna,* 633 F. Supp. 2d at 1056 (citing *Kyles*, 514 U.S. at 433, 437).  The government is not contesting -- in this non-routine case -- what Judge Alsup addressed in *Cerna*:  the discretion to order disclosure by a time certain before trial to ensure the administration of justice and avoid the tumult that results from late disclosure and mid-trial continuances.  *See id.* at 1056-57.  The government does contest -- without addressing decisions that allowed accelerated discovery in the capital case context and instead arguing only generally by reference to *Cerna* that the timing ought to be geared to trial -- whether disclosure of *Brady* information ought to happen early enough to allow its use by the defense in the capital case process (as opposed to by a date that is close to the trial date).  Opposition, ECF No. 213 at 7.

---

[6] The government also is responding to defense requests for information that the government may not have but is in a better position to obtain.  For example, in response to the defense's request for cell phone records, the government said that it would try to obtain cell phone information even if it was not in the government's possession.  *See* Status Report, ECF No. 310 at 2.

The undersigned finds persuasive those cases that hold that a district court may order accelerated discovery of *Brady* information -- when appropriate based on the facts of the specific case -- in a capital case to aid in the defense's presentation of its case before the capital case committee. *See United States v. Delatorre*, 438 F. Supp. 2d 892, 900 (N.D. Ill. 2006); *Perez*, 222 F. Supp. 2d at 170; *accord United States v. Wilde*, No. CR-12-0144 EMC, Order Granting in Part and Denying in Part Defendant's Motion to Compel, ECF No. 34 (allowing preauthorization discovery); *United States v. Ablett*, No. CR 09-0749 RS (LL), Amended Discovery Order, ECF No. 73. The point of these cases is that *Brady* information must be turned over so that the disclosures can be used effectively. *See Kyles*, 514 U.S. at 433, 437. The court also recognizes that witness safety may be a concern -- again if grounded in the facts of a specific case -- that may militate against disclosure of information. *See Delatorre*, 438 F. Supp. 2d at 901-02. The court recognizes the need to protect civilian witnesses in cases like this, *see Cerna*, 633 F. Supp. 2d at 1056-57, but believes that information can be disclosed in a manner that protects witness safety.

The *Brady* disclosures that the court orders here do not include Jencks. *See id.* at 1056 (district courts have no authority to override strict observance of the Jencks Act).[7]

Given that the government is not contesting disclosure of *Brady* information that does not affect witness safety, the court orders disclosure of that information now. The issue then is how to disclose *Brady* information that could implicate witness safety in a way to avoid that risk. Ordinarily, the time line would be geared to trial and conceptually similar to the orders entered by Judge Alsup in the *Cerna* case. *See id.* at 1062-63. That approach balances witness safety and the need for defense preparation. The court's view is that -- as Mr. Philipsborn and Mr. Mazer suggested -- information in this case can be disclosed now without affecting witness safety. For example, in *United States v.*

---

[7] The defendants' argument about the timing of Jencks disclosures were about coming up with a time period for disclosure before trial to allow for effective defense investigation and preparation and an orderly trial. *See* Reply, ECF No. 220 at 11. The defendants also pointed out that much of the material is not Jencks but instead is *Brady* information that ought to be produced now so that it can be used meaningfully in the capital case process. *Id.* at 11-12. At the hearing, Mr. Philipsborn acknowledged that Jencks and witness statements are subject to redaction for witness safety reasons but suggested that information could be provided without compromising witness safety (*e.g.*, a witness's description of a car or the lack of an identification of a client).

ORDER (CR 12-0119 SI (LB))
8

*Pray*, the government sent a ten-page letter to the defense summarizing witness statements and other information favorable to the defense, including discrepancies in eyewitness accounts, varying descriptions of the perpetrators, information that others may have committed the offense, and other information that might undercut the government's theory at trial. *See* 764 F. Supp. 2d at 187 (this process provided information for use in the capital case process, and the court thus did not order more, given the real witness safety issues in a case that involved the alleged murder by Pray of a prospective witness to prevent her from testifying that he used her house as a stash house). In *Cerna*, the court ordered early disclosure of non-Jencks *Brady* information that only inculpates persons never charged in this case or exculpates a defendant without inculpating any other indicted person, reasoning that this category presents little or no risk of witness retaliation. *See* 633 F. Supp. 2d at 1062. The government also did not object to disclosure of the information requested by the defendants in categories 14 through 30, and the court orders the immediate disclosure of it based on *Delatorre* and for the reasons set forth in note 3 (except for information about the government's deliberative process or other privileged information). *See supra* n.3; *Delatorre*, 438 F. Supp. 2d at 903. Other ways that *Brady* information can be provided now without affecting witness safety include the following:

- Content of witness statements generally without saying who the witnesses are.
- General impeachment information about witnesses (including criminal history, participation in criminal activity, and gang task force information such as gang affiliation and other personal information).
- Victim information (participation in criminal activity, acts that brought about their death) criminal history, gang task force, and other background information of victims.
- Witness information that is exculpatory that can be redacted to exclude names and identifying information, including information about their percipient observations such as what they observed and their general locations when they observed.

This approach is consistent with what the government says it is doing. For example, it says that it is producing information that is not discoverable (because it is not Rule 16(a)(2) material) such as summaries of witness statements with only the identifying information of witnesses redacted and law enforcement reports and memoranda. *See* Opposition, ECF No. 213 at 5. Providing information can be done -- as in *Pray* -- to give the defense the information it needs to make an effective

presentation during the capital case process. *See* 764 F. Supp. 2d at 187. The court is not requiring disclosures that really implicate witness safety, and the court agrees with the court in *Pray* that protecting witnesses is the norm, not the exception. *See id.* at 189-90. The court is not requiring identification of witnesses or privileged information, only preauthorization discovery requiring the government to produce information about mitigating and aggravating factors and other *Brady* materials so that they may be used in defense counsel's arguments against the pursuit of the death penalty to the United States Attorney's Office and the Department of Justice. *See Delatorre*, 438 F. Supp. 2d at 903. If there are issues about this production that are related to witness risk, the government may make that showing to the court *in camera*. *See id.* at 901-02. The court understands that there may be real witness safety issues here, but the government needs to articulate them in the context of the discovery that it resists producing. The court notes that the government's general, high-level responses to the discovery requests made it difficult to evaluate the witness safety issues. (The court's review of the facts in the record in the electronic docket provides the basis for this order.)

The court orders the production of this information within 21 days from the date of this order. Going forward, new information should be produced on a rolling basis within two weeks of its receipt by the government.

Also, the court also orders a process like that used in *United States v. Wilde*. *See* No. CR-12-0144 EMC, Order Granting in Part and Denying in Part Defendant's Motion to Compel, ECF No. 34. The defense lawyers may ask for *Brady/Giglio* for any specific witness that they have identified, and the government may submit any objection to the court *in camera*. *See id*. at 3.

Mr. Anderson also submitted to the court a protective order used by the United States Attorney's office in a murder case related to the MS-13 case. *See United States v. Mejia-Sensente*, No. CR 11-0293 CRB, Protective Order, ECF No. 51. That order provides for protected discovery of witness identifying information only to counsel, investigators, and experts and set forth separate rules about when information and how information could be disclosed to defendants. *Id.* The court believes that the government ought to be able to employ a similar process for the capital case process that allows the attorneys to make an effective presentation and prohibits any sharing of information that

implicates witness safety with the defendants. If the government is willing to agree to that process in one case, it ought to be able to agree to it here. The government should submit its views on employing a similar protective order process in its written submission that is due on November 5, 2012.

**IT IS SO ORDERED.**

Dated: October 31, 2012

_____
LAUREL BEELER
United States Magistrate Judge