IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH ORTIZ, et. al,<br><br>Defendants.<br>_____/ | No. CR 12-00119 SI<br><br>**ORDER COMPELLING GOVERNMENT TO PRODUCE ALL WITHHELD NON-JENCKS DISCOVERY TO COUNSEL FOR DEATH-ELIGIBLE DEFENDANTS PURSUANT TO A HEIGHTENED PROTECTIVE ORDER** |

At a hearing on January 30, 2013, the Court heard argument on certain defendants' motion to compel the Government to produce all withheld non-Jencks discovery pursuant to a heightened protective order. After considering the arguments and the papers, the Court GRANTS defendants' motion, for the reasons set forth below.

**BACKGROUND**

In a Second Superceding Indictment, the Government charged nineteen defendants with thirty-three counts, ranging from racketeering conspiracy, assault, the use of a firearm causing death, and murder in aid of racketeering, to being accessories after the fact to the racketeering murders and obstructing justice. Several of these charges, including murder in the aid of racketeering and the use of a firearm causing death, carry the potential penalty of death.

Four defendants, Joseph Ortiz, Victor Flores, Justin Whipple, and Benjamin Campos-Gutierez, face a potential death sentence. The Government has not yet decided whether it will seek the death penalty. The *United States Attorney's Manual* outlines an internal procedure for deciding when to seek the death penalty for death-eligible defendants. The manual provides for the opportunity for defense counsel to present mitigating evidence to the Government before it decides whether to seek the death

penalty during the death authorization process. The deadline for this process is currently scheduled for March 15, 2013.

Magistrate Judge Beeler has worked extensively to resolve the various discovery disputes in this case. Her order on December 2, 2012 encapsulates most of her discovery orders. *See* Docket No. 419. She ordered the Government to produce all Rule 16 discovery and all *Brady* material in its possession. She also ordered that when these materials were redacted for witness protection purposes, the Government should establish procedures for producing them without compromising witness safety, and listed several possible procedures, including relating the general content of statements without disclosing the witness's identity, revealing general impeachment information about witnesses, and revealing victim information. In addition, if there are redactions or potential *Brady/Giglio* material that the death-qualified defendants want access too, they can request an *in camera* review of that material. Judge Beeler granted this priority access to the death-qualified defendants so that they could use this material in preparation for the death authorization process.

Judge Beeler also exhorted the Government to consider using a protective order similar to one used in a murder case related to the MS-13 case. *See United States v. Mejia-Sensente*, No. CR 11-0293 CRB, Protective Order, ECF No. 51. That order, similar to the one defendants are currently requesting, provided that material implicating witness safety would be protected and available only to counsel, investigators, and experts. Judge Beeler explained that, "[b]ased on the defense's representations that the discovery is so spare for death-qualified defendants, the court again asks the government to consider employing a similar process for the death-eligible defendants for the capital case process that allows the attorneys to make an effective presentation and prohibits any sharing of information that implicates witness safety with the defendants." To date, the Government has declined to employ this measure.

**LEGAL STANDARD**

"A district court possesses inherent power over the administration of its business. It has inherent authority to regulate the conduct of attorneys who appear before it, to promulgate and enforce rules for the management of litigation, to punish contempt, and to remand cases involving pendent claims." *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (citations omitted). The Ninth Circuit has

2

United States District Court / For the Northern District of California

explained that, in order to effectuate the speedy and orderly administration of justice, "a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *United States v. W.R. Grace*, 526 F.3d 499, 508-09 (9th Cir. 2008). In *Grace*, the Ninth Circuit upheld the district court's order that required the Government to disclose a final witness list by a certain deadline, and limiting its witnesses to those on the list. It relied on the "well established principle that district courts have inherent power to control their dockets" and the fact that "judges exercise substantial discretion over what happens *inside* the courtroom." *Id.* at 509 (quotations and citations omitted). The Ninth Circuit concluded that "all federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *Id.* (quotations and citations omitted).

**DISCUSSION**

In the instant case, the Government has produced thousands of pages of discovery, and multiple terabytes of data. However, much of this discovery has been heavily redacted. Defendants argue that the heavy redactions impede their investigations and make it more difficult to determine if the Government is complying with its *Brady* obligations. Although Judge Beeler has authorized defendants to ask for *in camera* review of any documents that they believe were not produced or should not be redacted, the sheer volume of discovery in this case makes that impracticable and a significant burden on limited judicial resources.

Judge Beeler has invited the Government multiple times to employ devices that would give defendants greater access to discovery, while still protecting witness safety. In particular, Judge Beeler suggested that the Government employ a heightened protective order similar to the one employed in *United States v. Mejia-Sensente*. The Government represented to the Court that it did not wish to employ that device because it has greater witness protection concerns in this case than in that case.

This Court has the utmost concern for witness protection and witness safety. However, this Court does not believe that witness safety will be compromised by the heightened protective order.

3

Pursuant to this order, only the attorneys of the four death-eligible defendants[1] will be permitted to view all withheld non-Jencks discovery. These officers of the court will not be permitted to share this discovery with their clients or even counsel for other defendants. The attorneys may then make appropriate motions regarding any alleged *Brady* violations or to have improperly redacted materials be made more broadly available. The Court does not foreclose the Government from making the appropriate motions to continue to withhold any specific material that it deems particularly sensitive for witness safety. This procedure will alleviate the discovery burdens of this Court, ensure the orderly administration of justice and due process for defendants, while sufficiently alleviating witness safety concerns.

**CONCLUSION**

Accordingly, the Court GRANTS defendant's motion. The Court ORDERS the United States to disclose forthwith to each of the capital defendants, Joseph Ortiz, Victor Flores, Benjamin Campos-Gonzalez, and Justin Whipple, all non-Jencks discovery in the possession of or subject to the control of the Government. For purposes of this Order, non-Jencks Act discovery shall mean discovery that does not consist of statements of a witness as that term is defined in 18 U.S.C. § 3500(e).

For purposes of this order, any discovery produced pursuant to this order will be referred to as "Heightened Protected Discovery," and be produced pursuant to the following conditions:

1. The individual defendants shall not be given access to the Heightened Protective Discovery until further order of the Court.
2. Heightened Protected Discovery produced by the United States shall be designated with a special Bates-stamp or coding chosen by the Government after consultation with the defense. Any discovery so designated by the United States will be subject to the terms of this Order. Should counsel for any defendant believe that a designated document is not properly Heightened

---

[1] The Court does not find that the death authorization process creates any substantive or procedural rights, including discovery rights. In limiting the protective order to only the attorneys of the four death-eligible defendants instead of all defendants, the Court creates an extremely narrow protective order that will further protect witness safety. These four defendants have the most looming deadlines, and therefore the most pressing need for discovery. The trial dates for the other defendants have not been set. The fewer people allowed to view the withheld discovery, the safer the witnesses shall be.

4

Protected Discovery, s/he shall raise this issue with the United States. If the parties are unable to agree on the status of a given item of discovery, counsel for the defendant may seek leave of the Court to de-designate the item. However, all items designated as Heightened Protected Discovery must be treated as such until de-designated by the producing party or the Court.

3. The contents of the Heightened Protected Discovery provided by the Government shall not be disclosed by the defense to any person except as set forth below.

4. The Heightened Protected Discovery will be disclosed only to counsel for defendants Joseph Ortiz, Victor Flores, Justin Whipple, and Benjamin Campos-Gonzalez, including staff attorneys, paralegals and investigators working directly under the supervision of the counsel of record.

5. After the production of Heightened Protected Discovery, counsel for these defendants and/or any investigator(s) retained on behalf of defendants to assist in the defense of this matter may conduct investigation of matters included in the Heightened Protected Discovery.

6. Counsel for the defendants shall maintain a list of all persons who have reviewed the Heightened Protected Discovery.

7. Prior to receiving access to the Heightened Protected Discovery pursuant to this Order, all individuals shall sign a copy of this order acknowledging that they have reviewed and will abide by the order.

8. No person other than Covered Individuals may be allowed to examine Heightened Protected Discovery without further court order. Heightened Protected Discovery will be maintained in a secure environment which is reasonably certain to not expose the materials to individuals not listed above.

9. No copies of Heightened Protected Discovery may be provided to counsel for defendants other than those specified in this Order without further court order.

10. Any pleadings that include or make reference to the witness names, statements, or the above-described orders or their contents shall be filed under seal.

11. Upon conclusion of this matter in the District Court, counsel will return to the Court for a determination regarding the manner in which Heightened Protective Discovery will be maintained by counsel, returned to the Government, or destroyed.

12. This order is binding on successor counsel, if any, including appellate counsel, and a copy of this order will be transmitted to such successor counsel with the materials protected by this order, all without prejudice to successor counsel's right to move the Court for an order modifying or vacating this order. Before Heightened Protected Discovery can be turned over to successor counsel, successor counsel must sign a copy of this order.

**IT IS SO ORDERED.**

Dated: February 5, 2013

SUSAN ILLSTON
United States District Judge