UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 12-00119-SI (LB) |
| Plaintiff, | [Re: ECF Nos. 537, 541, 567, 589, 590] |
| v. | **AMENDED ORDER** |
| JOSEPH ORTIZ, et al., | |
| Defendants. | |

**AMENDMENT**

The first two paragraphs in section II, Subpoenas to South San Francisco Police Department, are amended slightly to clarify that Mr. Ortiz opposed the motion to dismiss and to eliminate the suggestion that the government had not seen the subpoena at issue.

**INTRODUCTION**

There are two discovery issues: (I) the California Department of Corrections and Rehabilitation's (CDCR'S) motions to quash Mr. Ortiz's subpoenas for central files and other inmate information; and (II) the United States' motion to quash Mr. Ortiz's subpoena for South San Francisco police records. The court held a hearing on April 11, 2013 and denies the motions.

The court does not file this order under seal because there were public-record references to the subpoenas, some motions were filed as part of the public record, and the court need not and does not refer to confidential information in this order. At Mr. Ortiz's request, the court sealed the

1   hearing to allow discussion of confidential matters.

## ANALYSIS

### I. SUBPOENAS TO CDCR

On February 7, 2013, the district court granted Mr. Ortiz's motion and issued two subpoenas to the CDCR for (A) Mr. Ortiz's central file and other information and (B) another inmate's central file and other information. *See* ECF No. 513 (under seal). On February 22, 2013, the CDCR moved in two public-record filings to quash the subpoenas, raising its ordinary sovereign immunity and privilege challenges and also attaching its standard protective orders. *See* ECF Nos. 537-544. On March 1, 2013, Mr. Ortiz opposed the motions. *See* ECF No. 551. The court set the hearing first for March 28, 2013, and then, based on different scheduling issues, for April 11, 2013, at 10:00 a.m. *See* 3/26/13 Docket Entry. 10 a.m. was a staggered start time on the regular 9:30 a.m. criminal calendar to reduce attorney wait time and inconvenience to the United States Marshals Service. On April 11, 2013, at 9:39 a.m., while the undersigned was already on the bench, the United States filed a two-line joinder to the CDCR's motions. *See* ECF No. 590 and related receipt. The joinder contained no legal argument.

At the April 11 hearing, the CDCR clarified that it filed the motion to quash essentially as a mechanism to ensure that the materials were produced pursuant to its standard protective orders. Mr. Ortiz had no objection to the standard protective orders.

At the hearing, the United States withdrew its objection to the production to Mr. Ortiz of his own files and records. (As the court observed, production of this information is standard.) As to production of the other inmate's file and records, the government reiterated that it objected to production of the information and also asked that if the court were to authorize the production, it be made subject to the stipulated protective order pending before the district court, which the court presumes is the order pending at ECF No. 553.

Because the practical import of the CDCR's motion is that it does not object to production of information so long as it is produced pursuant to its protective orders, the court denies the CDCR's motions to quash. The court will sign and issue the orders separately.

As to the government's objection to the production of the other inmate's records, the

1   information is produced in criminal litigation pursuant to protective orders.  On this record, it
2   appears to meet the four-part test for production of evidence pursuant to a Rule 17(c) subpoena:
3   (1) the documents or items sought are evidentiary and relevant; (2) they are not otherwise
4   procurable reasonably in advance of trial by exercise of due diligence; (3) the party cannot
5   properly prepare for trial without production and inspection in advance; and (4) the application is
6   made in good faith and is not a general fishing expedition.  *See United States v. Nixon*, 418 U.S.
7   683, 700 (1974).  Again, the government made no legal argument at all, and the CDCR's claims
8   of immunity and privilege do not apply to the United States.  But as the government requests, the
9   court orders production of the other inmate's records to Mr. Ortiz subject to the terms of the
10  heightened protective order.

11      The United States noted that it might seek to appeal the order as to the other inmate's
12  information and asked for a stay of its obligations until Wednesday, April 17, 2013.  The court
13  grants that stay.  Any legal argument needs to be addressed first to the undersigned (and not the
14  district court) and should address standing, particularly because the CDCR's immunity-and-
15  privileges arguments do not apply to the United States, which made no other legal argument.

16  **II. SUBPOENAS TO SOUTH SAN FRANCISCO POLICE DEPARTMENT**

17      On February 13, 2013, the district court granted Mr. Ortiz's motion for specified records from
18  the South San Francisco Police Department.  *See* ECF No. 525 (under seal).  The government
19  moved to quash the subpoena.  *See* ECF No. 567.  Mr. Ortiz opposed the motion in a sealed
20  opposition submitted on March 21, 2013 and filed (due to a delay in the sealing order) on March
21  26, 2013.  On April 11, 2013, at 9:35 a.m. (again, while the undersigned was already on the
22  bench), the government filed the City of San Francisco's one-line joinder.  *See* ECF No. 589.

23      At the hearing, the court discussed with the government how the subpoena seeks disclosure of
24  police reports that have nothing to do with the witness safety issues that the government is
25  concerned about and that are relevant only to mitigation (and not the charged conduct).  Also, on
26  this record, the court concludes that the subpoena request satisfies the *Nixon* four-part test.  *See*
27  418 U.S. at 700.  The undersigned can see no reason why the government would care about the
28  production of the information except if it has to do with witness safety.  As the Department of

Justice said in the Ogden memo, "[p]rosecutors are also encouraged to provide discovery broader and more comprehensive than the discovery obligations:"

> A. <u>Considerations Regarding the Scope and Timing of the Disclosures</u>: Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases. It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error. Prosecutors are encouraged to provide broad and early discovery consistent with any countervailing considerations. . . including but not limited to: protecting victims and witnesses from harassment or intimidation; protecting the privacy interests of witnesses; protecting privileged information; protecting the integrity of ongoing investigations; protecting the trial from efforts at obstruction; protecting national security interests; investigative agency concerns; enhancing the likelihood of receiving reciprocal discovery by defendants; any applicable legal or evidentiary privileges; and other strategic considerations that enhance the likelihood of achieving a just result in a particular case.

David W. Ogden, Deputy Attorney General, *Memorandum For Department Prosecutors: Guidance for Prosecutors Regarding Criminal Discovery* (Jan. 4, 2010), at 9-10.

The only possible issue here is witness safety, and even that is unlikely, given the time period for the requested reports and the people implicated in them. Nonetheless, to address that concern, the court proposed, and the defense did not object to, a gate-keeping function by the government whereby it could review the reports first and then produce them to the defense. The government did not agree to this process and asked that the court stay its obligations until Wednesday, April 17, 2013.

The court denies the government's motion to quash. On April 11, 2013, the court agreed to stay the government's obligations (but not South San Francisco's) until April 17, 2013. South San Francisco shall produce the requested reports to the government immediately and no later than 14 days from the date of the court's order on April 11, 2013 absent further order of the court for good cause. Within two days of receipt of the reports, and again absent a further court order granting an extension for good cause, the government shall produce the reports to either (A) counsel for Mr. Ortiz or (B) the court for an in camera inspection of any witness safety issues. For category B material produced to the court, the government must produce a log or other similar device (even highlighting) to allow identification of the witness safety issues. For category B material, the government may elect to produce the material to counsel for Mr. Ortiz pursuant to the heightened protective order.

AMENDED ORDER (CR 12-00119-SI (LB))

These records are produced based on Mr. Ortiz's subpoena, and there should be no delay regarding processing. The parties may designate production through the discovery coordinator to expedite production issues such as Bates labeling.

## CONCLUSION

The court denies CDCR's two motions to quash, the United States' joinder in it, the United States' motion to quash, and South San Francisco's joinder in it. This disposes of ECF Nos. 537, 541, 567, 589, and 590.

**IT IS SO ORDERED.**

Dated: April 17, 2013

_____
LAUREL BEELER
United States Magistrate Judge