1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  ACADIA L. SENESE (CABN 251287)
   W.S. WILSON LEUNG (CABN 190939)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-6758
       FAX: (415) 436-6753
8      wilson.leung@usdoj.gov

9  Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 12-CR-0119-SI |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL AND CROSS-MOTION TO QUASH SUBPOENAS |
| JOSEPH ORTIZ, et al., | |
| Defendants. | Court: Hon. Susan Illston<br>Date: December 20, 2013<br>Time: 11:00 am |

## I. INTRODUCTION

The Government respectfully submits this Opposition to the Defendants'[1] November 22, 2013 Motion to Compel Compliance with Subpoenas *Duces Tecum* (Docket #820) and Cross-Motion to Quash Subpoenas. Between October 17 and 22, 2013, the defendants served various subpoenas upon,

---

[1] The present motion to compel was filed on behalf of Justin Whipple. The Government's understanding from its prior conversations with defense counsel, however, is that all defendants with standing to challenge the wiretaps in this case (i.e., all remaining defendants except Mario Bergren) are seeking to compel compliance.

*inter alia*, Metro PCS, AT&T, the LA Clearinghouse, and the Hemisphere Project, seeking, in sum, copies of all correspondence between the recipients and various law enforcement agencies and copies of all records provided to law enforcement agencies relating to the state wiretap orders in this matter. For the following reasons, the defendant's motion to compel should be denied and their subpoenas quashed because: (1) the subpoenas were improperly issued because they merely fish for materials to which the defendants are not entitled; and (2) the Government long ago provided any and all responsive materials to the defendants as discovery and/or voluntary productions.

## II. RELEVANT BACKGROUND

In or about late October 2013, the Government was contacted by an employee of AT&T, who reported that AT&T had received a defense subpoena in the instant matter seeking correspondence with law enforcement and records. Several days later, in or about early November 2013, the Government was advised by Raymond Hamilton of the California State Attorney General Office that the Los Angeles Clearinghouse --- a state agency that coordinates and facilitates communications involving state law enforcement agencies --- had received a defense subpoena that, similarly, sought correspondence and records relating to this case.

The Government subsequently conferred with defense counsel in this case, who confirmed that they did in fact issue five subpoenas and have received no responses. David Andersen, Esq., counsel for defendant Justin Whipple, advised that the defense was going to file a motion to compel production. In response, the Government advised Mr. Andersen that the Government would seek to quash the subpoenas. Accordingly, on or about November 6, 2013, the parties agreed to ask the Court to delay the litigation of any Franks claims arising from the wiretaps in this case so that the parties can first litigate the issue of compliance with the subpoenas.[2] The Government, on behalf of the parties, subsequently filed a stipulation and proposed order memorializing this agreement, and the Court authorized the parties' agreement in an order dated November 12, 2013 (Docket #817).

---

[2] Following the parties' agreement of November 6, 2013, the Government advised AT&T and the California Attorney General's Office of the agreement and that they should hold any response to the subpoenas until after the parties' litigation had been decided. Thus, any suggestion in the defendants' motion to compel that the Government somehow unilaterally directed the California Attorney General's Office not to comply with the defendants' subpoena is misleading. See Def. Motion at 2-3.

According to the defense's moving papers, its subpoena to Metro PCS seeks the following:

(1) Copies of all correspondence generated, by either party, from April 25, 2010, through May 10, 2010, between employees of your company and representatives of the San Mateo County District Attorney; the Daly City Police Department; the South San Francisco Police Department; the U.S. Department of Justice, San Francisco Field Office; the California Department of Justice; or the California Electronic Intercept Court Order System, regarding wiretap interception orders for the following phone lines: (650) 834-5489; (650) 871-1994; (415) 573-5888; (650) 826-7354; (650) 243-1711; (650) 754-3464; (650) 201-6716; (650) 921-0260; (650) 766-1529; (650) 219-2600; (650) 716-6485.

(2) Copies of all records generated and preserved in any way concerning initiation of interception, termination of interception, or changes in interception parameters concerning telephone numbers (650) 834-5489; (650) 871-1994; (415) 573-5888; (650) 826-7354; (650) 243-1711; (650) 754-3464; (650) 201-6716; (650) 921-0260; (650) 766-1529; (650) 219-2600; (650) 716-6485; between April 25, 2010 and May 10, 2010. This request includes, but is not limited to, work orders, stored computer records, stored cell phone network records, "data dumps," deliveries of data over network portals, historical data, call detail records, GPS information, dialed digit information, dialed digit extraction information, post cut-through digits, cell site data, cell site location data, GPS data, call progress locations (automated message accounting data) connected to the use of each target telephone numbers, authorizations concerning the installation and or use of equipment known as dialed recorders, authorization or installation and/or use of equipment to trap and trace and identify the telephone numbers, and any other data delivered to law enforcement in any format.

The second subpoena was directed to the "Hemisphere Project, LA Clearinghouse," and seeks the following:

(1) Copies of all requests for phone records and/or data made by local, state or federal agents involved in "Master Case Number" DCDP #10010584, or "Other Case Number" SSFPD #10-8541, that were processed through Hemisphere Project, LA Clearinghouse, or the Northern California Regional Intelligence Center; (2) Copies of all phone data and records provided to law enforcement officers and agents involved in the investigation of "Master Case Number" DCDP #10010584, or "Other Case Number" SSFPD #10-8541 by means of requests processed by the Hemisphere Project, LA Clearinghouse, or the Northern California Regional Intelligence Center.

## III. DISCUSSION

### A. The Government Has Standing

As an initial matter, the Government has standing to file the instant opposition to the defendants' motion to compel and to seek to quash their subpoenas. "A party to a criminal case 'has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.'" United States v. Jenkins, 895 F. Supp. 1389, 1393 (D. Haw. 1995) (quoting United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982)); see, e.g.,United

States v. Lin, 2012 WL 6026500, at *1 (D. Nev. Dec. 4, 2012); United States v. Washington, 2012 WL 3061519, at *1 n.1 (D. Mont. July 26, 2012); United States v. Ail, 2007 WL 1229415, at *4 (D. Or. April 24, 2007); United States v. Giampa, 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (all finding Government had third party standing). Here, as explained below, the defendants' subpoenas were issued for an improper fishing expedition and, if enforced, would undermine well-established rules and laws relating to criminal discovery and disclosures. Accordingly, the Government has a legitimate interest in preventing the defendants from abusing Rule 17(c). See United States v. Lopez, 2011 WL 855808, *4 n.3 (N.D. Cal. March 9, 2011) (finding Government had standing to move to quash defense subpoena issued to local police department and explaining "[t]he government may move to quash a subpoena issued to a third party if the subpoena infringes upon [ ] its legitimate interests.") (citing Raineri).

### B. The Defendants' Subpoenas Were Improperly Issued and Should Be Quashed

The defendants' motion to compel compliance should be denied and their subpoenas should be quashed. First, rather than seeking specific, relevant evidence, they are the quintessential "fishing expedition" that the law explicitly prohibits. In addition, the Government last year produced the materials called for by the subpoenas to which the defendants are entitled. Accordingly, the defendants' motion should be denied and the subpoenas should be quashed.

*1.  Applicable Law*

Rule 17 of the Federal Rules of Criminal Procedure allows a party to ask the Court for a subpoena to compel witnesses, documents, and objects. See Fed. R. Crim. P. 17. The decision whether to issue a subpoena is subject the court's discretion. See United States v. Vought, 69 F.3d 1498, 1501-02 (9th Cir. 1995). Rule 17 itself, however, provides that the subpoena's demand cannot be "unreasonable or oppressive." See id. at 1502. To prevent abuse of Rule 17, the Supreme Court has held that pretrial production of evidence pursuant to Rule 17 is appropriate only where the moving party can show: (1) that the documents or items sought are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such

production and inspection in advance of trial and that the failure to obtain such inspection may unreasonably delay the trial; and (4) that the application is made in good faith and is not intended as a "general fishing expedition." United States v. Nixon, 418 U.S. 683, 699 (1974). Thus, the party seeking to issue or enforce a Rule 17 subpoena must demonstrate the relevancy, admissibility, and specificity of its request. See id. at 700; United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984); United States v. Beckford, 964 F. Supp. 1010. 1022 (E.D. Va. 1997).

Still, as the Supreme Court explained in Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951), "Rule 17(c) was not intended to provide an additional means of discovery." See also Reed, 726 F.2d at 577 ("Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'") (citation omitted); United States v. Marcello, 423 F.2d 993 (5th Cir. 1970) (affirming quashing of subpoena when defendant improperly tried to use as a discovery device); Jenkins, 895 F. Supp. at 1395 ("it is well established that Rule 17 is not a discovery device") (citing Nixon, 418 U.S. at 699); United States v. Reyes, 162 F.R.D. 468, 471 (S.D.N.Y. 1995) (with motion to quash, court reviews the subpoena and applies the Nixon standard to ensure that subpoena not being used as an additional discovery device). "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest sense." Bowman, 341 U.S. at 220; Nixon, 418 U.S. at 698 (citing Bowman, 341 U.S. at 220); United States v. Poindexter, 725 F. Supp. 13, 28 (D.D.C. 1989) ("[P]re-trial return dates ought not be used improperly as blank checks for the use of trial subpoenas *duces tecum* as a supplemental discovery device."); United States v. Cuthbertson, 651 F.2d 189, 192 (3rd Cir. 1981) ("Rule 17(c) was not intended to be a broad discovery device"); Beckford, 964 F. Supp. at 1022.

Moreover, under Rule 17, materials sought "cannot be *potentially* relevant or admissible, they must meet the test of relevancy and admissibility at the time they are sought." United States v. Marchisio, 344 F.2d 653, 669 (2d Cir. 1965) (emphasis added); see also United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y 1995); United States v. Burger, 773 F. Supp. 1419, 1425 (D. Kan. 1991). Thus, Rule 17 is stricter from the civil rules which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence.

See Cherry, 876 F. Supp. at 552; see also United States v. Gross, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case. This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials.").

Accordingly, while the court has discretion to determine whether a party seeking a Rule 17 subpoena has its burden, "[t]hat discretion must be exercised in remembrance of the responsibility to prevent Rule 17(c) from being improperly used as a discovery alternative to Rule 16." Beckford, 964 F. Supp. at 1022; United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) (explaining that vesting of discretion with court was necessary "to ensure that subpoenas are not used for impermissible discovery, which is more likely to be the case when advance production of materials is sought"). Indeed, without proper supervision, "Rule 17(c) would lend itself to discovery of the broadest sort --- a result that the drafters of the Rule decried." United States v. Finn, 919 F. Supp. 1305, 1329 (D. Minn. 1995).

In addition, to the extent that a defendant's Rule 17(c) subpoena purports to seek Brady, Giglio, or Jencks Act material, it is improper and should be quashed because "those materials are subject only to limited discovery pursuant to Fed. R. Crim. P. 16, Brady v. Maryland, 373 U.S. 83 (1963), [Giglio v. United States, 405 U.S. 150 (1972)], and the Jencks Act, 18 U.S.C. § 3500." Beckford, 964 F. Supp. at 1031. Accordingly, Rule 17(c) subpoenas are not available to obtain putative exculpatory information supposedly in the possession of the prosecution. See Cuthbertson, 651 F.2d at 195. Nor are Rule 17(c) subpoenas appropriate to obtain Giglio material. See Nixon, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Fields, 663 F.2d 880, 881 (9th Cir. 1981) (where defendant's purpose for seeking Rule 17(c) subpoena was to obtain impeachment material, subpoena quashed as improper); Cuthbertson, 651 F.2d at 195 (hearsay evidence which could only be used for impeachment may not be obtained by a Rule 17(c) subpoena); United States v. Hughes, 895 F.2d 1135, 1145-46 (6th Cir. 1990) (Rule 17(c) subpoena to a third party for impeachment material improper); Jenkins, 895 F. Supp. at 1393-94; see also United States v. Jennings, 960 F.2d 1488, 1491 (9th Cir. 1992) (noting that prosecution has responsibility for ensuring compliance with Brady); United States v. Little, 753 F.2d 1420, 1440-41 (9th Cir. 1984) ("[I]n

response to a request for exculpatory evidence, the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."); United States v. Cerna, 08-CR-00730-WHA (N.D. Cal. March 26, 2010), Docket #1604 at 2 ("Most fundamentally, it is important to note that the Brady obligation on the prosecutor is a self-executing duty.").

Moreover, Rule 17 itself prohibits procuring Jencks Act materials through the use of a Rule 17(c) subpoena. Fed. R. Crim. P. 17(h) ("Information Not Subject to a Subpoena. No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement."); Beckford, 964 F. Supp. at 1032. A defendant may not serve a subpoena in order to circumvent the discovery rules on the mere hope that it might uncover tangential impeachment evidence about potential witnesses. See Nixon, 418 U.S. at 699-700; Cuthbertson, 630 F.2d at 146 (explaining that "broad request" for documents "based solely on th[e] 'mere hope' that some exculpatory material might turn up" does not justify enforcement of Rule 17(c) subpoena); United States v. Purin, 486 F.2d 1363, 1368 (2d Cir. 1973).

### 2. *The Subpoenas Were Improperly Issued*

Given the foregoing principles, the defendants' subpoena should not have been issued and should be quashed.

First, the defendants have failed to present any tangible to support their motion to compel. The motion itself merely contends in conclusory fashion that the subpoenas were justified by an *ex parte* application, so therefore, the subpoenas were proper. See Def. Motion at 4. The Government has asked the defense for a copy of its application so that it could respond to the defendants' motion to compel, but the defense has declined to provide it.[3] Thus, on the present record, the defense motion is justified by nothing other than circular logic, i.e., the subpoenas were properly issued because they were issued. Nixon and its progeny require more.

---

[3] The Government renews its request to defense counsel for disclosure of the subpoena application. Should counsel continue to refuse to provide it, the Government would ask the Court to order the application's production to the Government.

1    Without the defendants' subpoena application, the Government is at a disadvantage responding

2    to their motion to compel. The Government, however, believes that the defendants' Rule 17 subpoenas

3    is an attempt to bolster their speculation that intelligence agencies somehow were involved in this case

4    and to use this speculation to manufacture a <u>Franks</u> claim against the wiretap affidavits in this case. For

5    instance, several weeks after the subpoenas were issued, in a letter dated October 25, 2013, counsel for

6    Justin Whipple sent a letter to the Government requesting "discovery that is necessary for preparing of

7    the upcoming <u>Franks</u> hearing," explaining:

> There have been a number of disclosures in the press and before Congress regarding the extent to which investigators have been obtaining information from the NSA and other agencies. There have also been disclosures regarding intelligence being obtained by local law enforcement from these Government agencies, such as the Hemisphere Project. The flow of information from the NSA and other Government agencies to law enforcement has become so routine that it has been institutionalized. The Special Operations Division (SOD) is but one example. It has been widely reported that the Department of Homeland Security is one agency that has obtained information gathered by the National Security Agency (NSA) and its Special Operations Division. As Homeland Security is the lead investigating agency in this case, it seems likely there is such information pertinent to this case.

The letter went on to ask for "information regarding this case, without limitation, originating from or passing through recently disclosed national security programs," "[a]ny information, requests for information, and correspondence, regarding this case provided to, or received from the Hemisphere Project," and "[a]ny information regarding efforts to conceal or sanitize the actual source of information by the use of 'parallel construction' or similar artifice."

Likewise, on November 23, 2013, the Wall Street Journal published an article ("Data Sweeps in Drug Cases Face Challenge; 'Hemisphere' Effort Involves AT&T Workers Placed at Narcotics-Intelligence Centers") proclaiming that defense attorneys in San Francisco federal court

> accuse the government of using a secretive program to illegally tap into massive amounts of phone-call data….
>
> The program, called Hemisphere, involves AT&T Inc. employees who are placed at three U.S. narcotics-intelligence centers around the U.S., where they can respond immediately to subpoenas for phone data of suspected drug traffickers….
>
> In a criminal proceeding involving South San Francisco gang members charged with a triple murder and other offenses, the defense received documents under the discovery process that identify Hemisphere and involve phone records from AT&T, said people familiar with the case who spoke on the condition of anonymity because the documents

have yet to be disclosed publicly. Defense lawyers are now seeking to suppress wiretap evidence in the case.[4]

Thus, if the defendants' subpoenas were issued in an attempt to confirm their speculation regarding the involvement of intelligence agencies, this would be the quintessential fishing expedition that the law prohibits. Press reporting of rumored intelligence agency involvement in other cases hardly provides a proper basis to justify the issuance of subpoenas in this case. Even less reliable are the assumptions of defense counsel based on such press reporting.

Moreover, in order to justify even a mere hearing on a Franks claim, a defendant bears the burden of making "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and establishing that "the allegedly false statement [was] necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978); see United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th Cir. 2002). The Supreme Court was careful to limit Franks so that hearings would not become "commonplace" by being "obtainable on a bare allegation of bad faith." United States v. Chester, 678 F.2d 1353, 1360 (9th Cir. 1982). Importantly, Franks claims are not permissible "for purposes of discovery or obstruction." Franks, 438 U.S. at 170.

Given, then, the strict requirements that a defendant must meet in order to get even a hearing on a Franks claim, the Nixon showing for a subpoena should reflect this heightened standard when the subpoena is sought for a Franks claim. Cf. United States v. Armstrong, 517 U.S. 456, 468 (1996) ("the justifications for a rigorous standard for the elements of a selective-prosecution claim…require a correspondingly rigorous standard for discovery in aid of such a claim"). Thus, even if it is assumed somehow that press accounts and idle speculation are ordinarily sufficient to get a subpoena under Rule 17 (which they are not), they would still fail to justify a subpoena for a Franks claim.

Furthermore, the investigation of the present case did not involve any intelligence agencies. Period. Rather, like any other criminal investigation involving wiretaps, the underlying investigation

---

[4] The materials discussed in the Wall Street Journal article are subject to the protective order in place between the parties. The Government is troubled by the possibility that the contents of protected material may have been revealed, even generally, to the press by a signatory to the protective order.

1 made use of non-content telephone records, which were procured through ordinary, unexciting means,
2 i.e., subpoenas and court orders. For instance, as set forth in the declaration of AT&T employee
3 Jonathan Birk, all the telephone records that AT&T provided in response to the request of the Daly City
4 Police Department that the defendants now seek to replicate via subpoena were provided pursuant to a
5 court order issued on April 20, 2011, by the Honorable Stephen Hall of the California Superior Court in
6 San Mateo.[5] See Birk Dec. ¶ 2. Notably, AT&T provided only the specific records for the specific
7 telephone numbers required by the court's order, and nothing more. See id.

8 None of these telephone records, of course, is subject to the protections of the Fourth
9 Amendment because they were in the possession of a third party, i.e., the telephone company. See
10 Smith v. Maryland, 442 U.S. 735, 743-44 (1979). Indeed, the Ninth Circuit has gone so far as to hold
11 that similar non-content computer records in the possession of a third party could not be suppressed even
12 if the Government procured them in violation of the federal pen register statute. See United States v.
13 Forrester, 512 F.3d 500, 512 (9th Cir. 2008). Thus, it is difficult to see how telephone records would be
14 so crucial to the defense that they must be procured immediately via a Rule 17 subpoena.

15 This difficulty is compounded by the fact that the Government has provided to the defendants the
16 telephone records used in the underlying investigation. According to the Government's discovery
17 records, it provided call detail records and subscriber information for ten of the eleven numbers that
18 were the subject of the defendants' Metro PCS subpoena, as well as thirty Excel files of both Metro PCS
19 and AT&T records. Thus, even setting aside the defendants' speculative conspiracy theories about
20 intelligence agency involvement in this case, the defendants' subpoenas are simply unreasonable and
21 onerous because they seek telephone records that the Government has already provided to them. In
22 addition, the defendants' demands also violate the legal prohibition against using Rule 17 subpoenas as a
23 discovery tool.

24 As for the defendants' demand for all correspondence and requests involving law enforcement
25 agencies, this demand is unsupported by law or rule. Fed. Rule Crim. P. 16(a) governs discovery, and
26 there is nothing under Rule 16(a) that calls for such material to be provided. Indeed, such material may

---

[5] This order was produced to the defense and bears control number "STATEWIRE-001011" through "STATEWIRE-001013."

well fall under Rule 16(a)(2)'s prohibition against discovery of government reports and memoranda, or the prohibition against the discovery of witness statements set forth under Rule 16(a)(2), the Jencks Act, and Rule 17 itself. Moreover, at least two district courts have held that pen register applications are not subject to discovery. See United States v. West, 633 F. Supp.2d 447, 451-52 (E.D. Mich. 2009); United States v. Chavez-Chavez, 2008 WL 1847229, at *3-4 (S.D. Cal. April 22, 2008). Thus, if pen registers are not subject to discovery, other instruments that law enforcement agencies convey to telephone companies to procure telephone records --- e.g., subpoenas and court orders --- are also not subject to discovery.

Indeed, the most troubling flaw in the defendants' subpoenas is that they would fundamentally undermine well-settled rules of discovery and disclosure. The subpoenas at issue here do not seek any specific document or object of obvious evidentiary relevance and admissibility. Rather, the subpoenas merely seek to duplicate the Government's investigation, to steal a peek into the Government's investigation in the hope of finding something that might be useful. This is not the purpose of Rule 17 and is contrary to law. See Kyles v. Whitley, 514 U.S. 419, 436-47 ("We have never held that the Constitution demands an open file policy…."); United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir. 1986) (holding that the law does not "'provide defense counsel with unlimited discovery of everything known by the prosecutor'") (quoting United States v. Agurs, 427 U.S. 97, 106 (1975)). Accordingly, the defendants' motion to compel enforcement of their subpoenas should be denied and the subpoenas should be quashed.

**IV.  CONCLUSION**

For all of the foregoing reasons, the defendant's motion to compel should be denied and the defendants' subpoenas should be quashed.

DATED:  December 6, 2013

Respectfully submitted,

MELINDA HAAG
United States Attorney

By:   /s/
Acadia L. Senese
W.S. Wilson Leung
Assistant United States Attorneys