IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>VICTOR FLORES, et al.,<br><br>    Defendants.<br>_____ / | No. CR 12-00119 SI<br><br>**ORDER RE ADMISSIONS AT CLASSIFICATION INTERVIEWS (Docket No. 1144)** |

Now before the Court is defendants' motion to exclude admissions made during classification interviews. Specifically, shortly after their arrests in this case, during the course of their booking interviews, all four defendants purportedly admitted that they were Norteños.[1]

The Fifth Amendment protection against self-incrimination may be implicated when the government attempts to introduce a defendant's previous statements at trial. Statements made during custodial interrogation are inadmissible unless the defendant has been warned of his rights and has either waived or failed to invoke them. *See Miranda v. Arizona*, 384 U.S. 467-71 (1966). The term "interrogation" refers both to express questioning, and to its "functional equivalent." *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (defining interrogation as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect").

---

[1] In its opposition, the government refers to other statements, unrelated to the instant case, in which three of the defendants allegedly admitted gang affiliation. *See* Dkt. No. 1162 at 2. Because the admissibility of those statements is not challenged by defendants' motion, the Court's ruling here shall not apply to those additional, unrelated statements.

However, the Supreme Court recognizes an exception to the *Miranda* rule for statements made in response to routine booking questions. *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990). Under the routine booking questions exception, law enforcement need not give *Miranda* warnings prior to asking "questions to secure the biographical data necessary to complete booking or pretrial services." *Id.* at 601 (citation and internal quotation marks omitted). However, statements are not admissible merely because they are made in response to questions asked during the booking process. *See id.* n.14.

Defendants move to exclude their admissions, as memorialized in their booking classification reports, that they are Norteño gang members. *See* Dkt. No. 1144. The classification reports were completed by Deputy Sheriff Daniel Pischke at the Alameda County Jail, shortly after defendants were arrested in this case. The government argues that these admissions are admissible as statements made in response to routine booking questions.

In *United States v. Washington*, 462 F.3d 1124, 1132-33 (9th Cir. 2006), the Ninth Circuit held that asking a defendant for his gang moniker was a routine booking question. The defendant argued that the question was designed to elicit an incriminating response because the police were aware that an individual bearing the gang moniker to which the defendant admitted had allegedly been involved in the bank robbery under investigation. *Id.* at 1133. The Ninth Circuit noted that the agents in the case routinely obtained gang moniker and gang affiliation information to ensure prisoner safety. *Id.* The court held that asking a suspect to identify himself – even by means of a gang moniker – did not violate *Miranda*. *Id.*

This case presents a different question. Here, defendants were not asked to provide their gang monikers for identification purposes; they were asked for their gang affiliations. Whereas in *Washington*, the crimes under investigation were related to bank robbery, here defendants were arrested for alleged participation in a gang alleged to be a RICO enterprise. Unlike in *Washington*, the question of defendants' gang affiliations was therefore directly related to the crimes for which they were arrested. The Court finds that it would violate defendants' *Miranda* rights if these statements were admitted at trial.

The government argues that the statements should be admissible because the fact to which defendants admitted – being members of a gang – is not itself a crime and is not what defendants are

2

charged with at trial. It is true that being members of the 500 Block/C Street Gang does not by itself prove that defendants participated in a RICO enterprise. However, the government is attempting to prove that the 500 Block/C Street Gang was the RICO enterprise in which defendants participated. Defendants' statements regarding gang affiliation are therefore more than tangentially related to the charges against them.

The Court accepts the government's contention that Deputy Pischke was uninvolved in the investigation into this case and was merely fulfilling his role of conducting routine booking and classification interviews. However, each the forms Deputy Pischke filled out noted at the top that these defendants had been arrested on RICO charges. He should therefore have been on notice that even routine booking questions about gang affiliation were reasonably likely to elicit incriminating responses that might be directly related to this case. Absent proper *Miranda* warnings and a valid waiver of rights, defendants' responses to the question of gang affiliation are not admissible.

Questions like these are now a necessary part of the booking process due to increasing gang activity on the streets and in area jails and prisons. The Court finds that these questions are not inappropriate – motivated as they are by a concern for prisoner safety – and under some circumstances, the responses may be admissible. However, in this case, where a large part of the government's burden at trial involves proving that these defendants were members of a RICO enterprise, admitting defendants' un-*Miranmdi*zed admissions of gang membership would be patently unfair.

**IT IS SO ORDERED.**

Dated: July 9, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

3